# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SHYVONNE HILL**                                                **CIVIL ACTION NO.**

**VERSUS**                                                            **21-325-BAJ-EWD**

**DG LOUISIANA, LLC**

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 30, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SHYVONNE HILL**                                  **CIVIL ACTION NO.**

**VERSUS**                                              **21-325-BAJ-EWD**

**DG LOUISIANA, LLC**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Notice of Removal,[1] filed by DG Louisiana, LLC ("Defendant"). Shyvonne Hill ("Plaintiff") has not filed a motion to remand; however, as Defendant has not established the requisite amount in controversy, it is recommended[2] that this matter be remanded to the Eighteenth Judicial District Court for the Parish of West Baton Rouge, Louisiana.

## I.    BACKGROUND

This is a civil action involving claims for damages allegedly sustained by Plaintiff when she "slipped and fell on an unknown liquid" while shopping at a store owned by Defendant on February 19, 2020.[3] On February 26, 2021, Plaintiff filed a Petition for Damages against Defendant in the Eighteenth Judicial District Court for the Parish of West Baton Rouge, Louisiana.[4] Defendant removed the matter on June 2, 2021, asserting federal subject matter jurisdiction under 28 U.S.C. § 1332.[5]

---

[1] R. Doc. 1.
[2] *See, e.g., Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.")
[3] R. Doc. 1-2, ¶ 4.
[4] R. Doc. 1-2, p. 2.
[5] R. Doc. 1.

As set forth more fully in the *sua sponte* Order issued by the Court on September 23, 2021 ("September 23 Order"), the Notice of Removal, despite several appended documents,[6] did not adequately establish that Plaintiff's damages are likely to exceed $75,000, exclusive of interest and costs.[7] Defendant was ordered to file a memorandum and supporting evidence concerning whether the amount in controversy requirement of 28 U.S.C. § 1332 is met, and Plaintiff was ordered to file either a Notice stating that she did not dispute that Defendant established the jurisdictional requirements of 28 U.S.C. § 1332, or a Motion to Remand.[8] Defendant filed a Memorandum Establishing Amount in Controversy, along with a Supplemental Memorandum Establishing Amount in Controversy (collectively, the "Memorandum").[9] Plaintiff filed no "Notice" or Motion to Remand despite the Court's September 23 Order. Relatedly, the parties' Status Report simply states, "This case was removed to Federal Court pursuant to the provisions of 28 USC § 1332 as it is a dispute between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs."[10]

Because Defendant has not met its burden of establishing by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional threshold, remand in recommended.

---

[6] The documents appended to the Notice of Removal relevant to Plaintiff's claims and the amount in controversy include: (a) the Petition (R. Doc. 1-2), (b) Plaintiff's Answers to Defendant's Interrogatories (R. Doc. 1-3), (c) Plaintiff's Response to Defendant's Request for Admission (R. Doc. 1-4), (d) e-mail correspondence regarding Plaintiff's medical records and discovery responses (R. Docs. 1-5, 1-6, 1-7), and (e) Plaintiff's medical records (R. Doc. 1-8).

[7] R. Doc. 9.

[8] *Id.*

[9] R. Docs. 10 & 13

[10] R. Doc. 4.

## II.    LAW AND ANALYSIS

### A.    Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[11] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[12] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[13] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[14] The removing party has the burden of proving federal diversity jurisdiction.[15] Remand is proper if at any time the court lacks subject matter jurisdiction.[16] The Court has a duty to raise the issue of jurisdiction *sua sponte.*[17]

### B.    Procedural History Relevant to the Amount in Controversy

The Petition only generally alleges that Plaintiff suffered "severe and persistent bodily injury" because of the February 19 fall.[18] Plaintiff seeks the following damages: "past and future physical pain, suffering and discomfort; past and future mental anguish, aggravation, and

---

[11] 28 U.S.C. § 1441(a).

[12] 28 U.S.C. § 1332(a)-(a)(1). The Notice of Removal adequately alleges that the parties are of diverse citizenship, as Plaintiff is a citizen of Louisiana and Defendant is a "single member limited liability company whose sole member is Dolgencorp, LLC, whose sole member is Dollar General Corporation, which is incorporated in and has its principal place of business in Tennessee." R. Doc. 1-2, at introduction; R. Doc. 1, ¶ 5(A)(2).

[13] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

[14] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[D]oubt about the propriety of removal must be resolved in favor of remand."; *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.").

[15] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[16] *See* 28 U.S.C. § 1447(c).

[17] *Richard v. USAA Casualty Insurance Company,* No. 17-175, 2017 WL 8944429 (M.D. La. Nov. 30, 2017), citing *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).

[18] R. Doc. 1-2, ¶¶ 4-5.

annoyance; past and future medical expenses; past and future wages; loss of earning capacity; loss of enjoyment of life; and disability from engaging in recreation."[19] In its Notice of Removal, Defendant admitted it is "not facially apparent" from the Petition "that the amount in controversy exceeds $75,000."[20] Rather, Defendant argued that "the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs," based on (1) Plaintiff's injuries and damages allegations; (2) information about Plaintiff's injuries contained in her medical records; and (3) Plaintiff's objections and/or unresponsive answers to Defendant's discovery requests regarding the amount in controversy.[21] Defendant alleged that Plaintiff's medical records show (1) that Plaintiff was diagnosed with "lumbar herniated nucleus pulposus, lumbosacral facet joint syndrome, and sacroiliitis"; (2) that Plaintiff underwent a lumbar ESI on September 10, 2020, about 6.5 months after the fall; (3) that Plaintiff reported "about 70% relief for about 8 months" from this ESI; (4) that Plaintiff underwent a second bilateral L4-5 transforaminal ESI; and (5) that Plaintiff's medical records indicate that her provider "would consider a lumbar medial branch block/radiofrequency ablations, and that Plaintiff may benefit from bilateral SI joint injections."[22] Coupling this information with references to several Louisiana state court cases involving purportedly similar injuries, Defendant further argued that Plaintiff's damages, if proven at trial, will exceed $75,000.[23]

In its Memorandum, Defendant contends that "the medical evidence and information known to date is sufficient to establish that the amount in controversy in this matter more likely

---

[19] *Id*. at ¶ 12 (cleaned up).
[20] R. Doc. 1, ¶ 3.
[21] R. Doc. 1, ¶¶ 2-3, 5(B); R. Doc. 1-8, at G-005 – G-007.
[22] R. Doc. 1, ¶¶ 2, 3, 5(B). *See also* R. Doc. 1-8.
[23] R. Doc. 1, p. 3, n. 16, citing *Trahan v. Deville*, 933 So.2d 187 (La. App. 3 Cir. 2006) (awarding $75,000 in general damages to a woman who underwent spinal injections and therapy or neck and back injuries) and *Donaldson v. Hudson Ins. Co*., 116 So.3d 46 (La. App. 4 Cir. 2013) (awarding $125,000 in general damages to a man who sustained cervical and lumbar disc herniations, requiring cervical injections and a recommended rhizotomy).

than not exceeds $75,000.00, exclusive of interest and costs."[24] First, as with the Notice of Removal, Defendant relies heavily on Plaintiff's medical and billing records, which are attached to the Memorandum.[25] However, Defendant provided more information about Plaintiff's injuries, diagnoses, and treatment from additional medical records attached to the Memorandum. Those records show (1) that Plaintiff began treating with LA Health Solutions on April 28, 2020 with complaints of "low back, right hip, and bilateral knee pain," which Plaintiff related to her February 19 fall, and was diagnosed with "various" things, including "lumbar radiculopathy"; (2) that a July 9, 2020 CT scan showed "disc herniations at L2-3, L3-4, L4-5, along with disc bulges at all levels from L1-S1"; (3) that Plaintiff received ESIs at left L4-5 and L5-S1 on August 31, 2020 and again on September 10, 2020; (4)  that Plaintiff "frequently reported right knee pain" after her fall, and was recommended on December 9, 2020 for an MRI of her right knee "due to increased swelling, popping, and limping"; (5) that Plaintiff's medical records from LA Health Solutions, dated April 2, 2021, "indicate a recommended medial branch block/RFA in relation to lumbar herniated nucleus pulposus and lumbosacral facet joint syndrome, and further indicate that Plaintiff may benefit from bilateral SI joint injections in relation to sacroiliitis"; (6) that on April 12, 2021, Plaintiff was referred to an orthopedic specialist "after reporting 'her knee pain has progressively gotten worse since the injury;'"; (7) that Plaintiff received an ESI at right L4-5, L5-S1 on May 3,

---

[24] R. Doc. 10, p. 1.

[25] *Id*. at pp. 2-4. *See also* R. Doc. 10-1 (billing records related to Plaintiff's treatment with LA Health Solution BR-Ortho Spine), R. Doc. 10-2 (billing records related to Plaintiff's treatment with Louisiana Spine & Pain Institute), R. Doc. 10-3 (Plaintiff's billing records from the Imaging Center of Louisiana), R. Doc. 10-4 (2 pages of medical records relating to a "CT L-Spine" examination of Plaintiff at Imaging Center of Louisiana on July 9, 2020), R. Doc. 10-5 (9 pages of medical records related to Plaintiff's treatment with the Louisiana Spine & Pain Institute), R. Doc. 10-6 (41 pages of medical records relating to Plaintiff's treatment at LA Health Solutions), R. Doc. 10-7 (8 pages of Plaintiff's medical records from Baton Rouge General Medical Center); R. Doc. 10-5 (87 pages of Plaintiff's medical records from the NMCC); R. Doc. 10-6 (4 pages related to a referral of Plaintiff for evaluation and treatment of "right knee pain"), R. Doc. 8 (1 page related to Plaintiff's treatment with the Baton Rouge Clinic). These documents—except 8 pages medical records from LA Health Solutions related to treatment on April 2, 2021, April 28, 2020 and 2 pages from Louisiana Spine & Pain Institute relating to an ESI Plaintiff received on September 10, 2020—are new, summary judgment-type information provided by Defendant in its effort to establish that the amount in controversy requirement is satisfied, and these records have been considered.

2021; and (8) that "[a]s of at least May 24, 2021, Plaintiff was still reporting complaints of knee pain at Louisiana Spine & Pain Institute."[26] Additionally, Defendant notes that Plaintiff has incurred "at least $16,501.00" in medical expenses as of May 5, 2021.[27]

Defendant later supplemented the Memorandum to provide additional information about Plaintiff's diagnoses, treatment, and medical expenses obtained during Plaintiff's October 11, 2021 deposition which Defendant contends "further supports that the amount in controversy in this matter exceeds $75,000, exclusive of interest and costs."[28] The additional information provided includes: (1) that as of her October 11, 2021 deposition, Plaintiff was still experiencing knee pain she relates to the February 19 fall and still treating for same, as well as still experiencing pain in her lower back and groin area; (2) that Plaintiff treated with LA Health Solutions on August 25, 2021 for neck and back pain, where she was diagnosed with a "lumbar herniated disc, lumbosacral facet joint syndrome, right knee pain, sacroiliitis, an increase in [Plaintiff's] low back pain and bilateral lower extremity symptoms," and neck pain; and (3) that Plaintiff was "pending a Bilateral L4 & L5 transforaminal ESI with a projected cost of $5,764."[29]

Next, Defendant created a formula to attempt to quantify the value of Plaintiff's general damages. As to Plaintiff's back injuries, Defendant "rel[ied] on the quantum cited by this Honorable Court finding that '[a] general review of quantum cases demonstrates that general damages awards for multiple bulging discs often (if not more often than not) do not exceed $30,000-$45,000, even where the plaintiff is actually treated with steroid injections."[30] Relying on

---

[26] R. Doc. 10, pp. 1-5. *See also* R. Docs. 1-4, 1-5, 1-6, 1-7, 1-8.
[27] *Id*. at p. 2. *See also* R. Docs. 1-1, 1-2, 1-3.
[28] R. Doc. 13.
[29] *Id*. at pp. 2. *See also* R. Doc. 13-1.
[30] *Id*. at p. 3, citing R. Doc. 9, p. 3, n. 14.

prior decisions from this Court,[31] Defendant assigned a value of $2,625.00 per month to Plaintiff's "soft tissue" knee injury. Defendant then multiplied $2,625 by 20 months (*i.e.*, the number of months for which Plaintiff has treated for her knee) and assigned a value of $52,500 to Plaintiff's knee injury claim.[32] Lastly, Defendant added in Plaintiff's incurred medical expenses ($16,501) and expected future medical expenses ($5,764), which resulted in the following potential range of potential values for Plaintiff's claims

|  | | Low | High |
|---|---|---|---|
| 1. | General Damages for Low Back Injury | $30,000.00 | $45,000.00 |
| 2. | General Damages for Knee Injury | $52,500.00 | $52,500.00 |
| 3. | Plaintiff's Past Medical Expenses: | $16,501.00 | $16,501.00 |
| 4. | Plaintiff's Future Medical Expenses: | $5,764.00 | $5,764.00 |
| | **TOTAL:** | **$104,765.00** | **$119,765.00** |

Despite acknowledging that "Plaintiff may not have received a formal surgical

---

[31] *Id.* at p. 4, citing *West v. Red Frog Events, LLC*, No. 17-1640, 2018 WL 4376481 (M.D. La. July 24, 2018), *report and recommendation adopted*, 2018 WL 437699 (M.D. La. Sept. 13, 2016). Defendant cites *West* for the proposition that the value of a soft tissue injury is $2,625.00 per month of treatment. *Id.* at pp. 4-5 (discussing the *West* Court's "reliance" on *Moraus v. Frederick*, 916 So.2d 474 (La. App. 3 Cir. 11/2/2005)). However, Defendant misunderstands the context in which this Court discussed *Moraus* and soft tissue injuries in *West*. In *West*, the defendant opposed plaintiff's motion to remand, contending that the amount in controversy was satisfied based on general damages awards in other cases "for similar injuries." *West*, 2018 WL 43276481, at *5. As part of that argument, defendant, relying of *Millican v. Ponds*, 763 So.2d 1188 (La. App. 1 Cir. June 23, 2000) (affirming award of $42,500 for soft tissue injuries lasting about six months), contended that the amount in controversy requirement was satisfied based "just [on] the soft tissue neck and back injury portion of the claim" because plaintiff treated for over one years for soft tissue injuries to her neck and back." Responding to defendant's argument, the Court noted that there are other Louisiana cases that "support a lower award for soft tissue injuries." *Id.* The Court then cited several cases involving lower awards for soft tissue injuries, including *Moraus*, and noted that, "[r]elying on *Moraus*, an award of $2,625.00 per month for thirteen months of soft tissue injury would total $34,125.00." *Id.* at fn. 46. Even assuming *arguendo* the Court "adopted" the *Moraus* valuation of $2,625.00 per month of soft tissue injuries (it did not), the more important take away from *West* is that, despite the discussion of *Moraus* and soft tissue injury awards, the Court nonetheless *sua sponte* recommended that case be remanded to Louisiana state court specifically because of the defendant's "failure to meet its burden to prove, by a preponderance of the evidence, that the amount in controversy required to exercise jurisdiction under 28 U.S.C. § 1332 is met." *Id.* at *8. For the reasons explained below, the same recommendation is warranted here.

[32] *Id.* at p. 4, citing *West*, 2018 WL 4376481, at *5, n. 46, citing *Moraus*, 916 So.2d 474. *See also* R. Doc. 13, p. 2.

recommendation," Defendant nonetheless argues that it has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs, considering the "absolute low-end of possible damages exceed $75,000."[33]

### C.    Defendant Has Failed to Establish that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Louisiana law prohibits plaintiffs from specifying a monetary amount of damages in their state court petitions.[34] When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving that the amount in controversy exceeds $75,000.[35] The removing party may make this showing either: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[36] Once a removing defendant has established, by a preponderance, that the amount in controversy exceeds the federal jurisdictional amount, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[37]

As Defendant concedes, it is not facially apparent from the Petition that Plaintiff's claims likely exceed the federal jurisdictional amount.[38] There are no allegations of specific injuries. Plaintiff's allegations of "severe and persistent bodily injury," along with demands for general categories of damages (*e.g.*, physical pain, suffering and discomfort; mental pain, aggravation, and annoyance; medical expenses; past and future wages; loss of earning capacity; loss of enjoyment of life; disability from engaging in recreation; etc.),[39] are insufficient to establish the amount in

---

[33] *Id*. at pp. 5-6.
[34] La. Code Civ. P. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).
[35] *Luckett*, 171 F.3d at 298, citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).
[36] *Luckett*, 171 F.3d at 298, quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).
[37] *De Aguilar*, 47 F.3d at 1412.
[38] *See* R. Docs 1, p. 3.
[39] R. Doc. 1-2, ¶¶ 6, 12.

controversy. "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."[40] Further, the Petition does not provide any information regarding Plaintiff's claimed medical expenses, lost wages, disability, etc. "If the complaint is vague with regard to the types of injuries, medical expenses incurred, and future medical problems resulting from the incident, the court must conclude that it was not 'facially apparent' that the amount of damages would exceed $75,000."[41]

Since it is not facially apparent from the Petition that Plaintiff's damages will likely exceed the federal jurisdictional amount, the Court must next consider whether Defendant has met its burden of proving, through summary judgment-type evidence, that the amount in controversy in this case is likely to exceed $75,000, exclusive of interest and costs. Regarding summary judgment-type evidence, Defendant relies heavily on Plaintiff's medical and billing records and, to a lesser extent, on Plaintiff's pre-removal discovery responses, some post-removal medical records, and Plaintiff's post-removal deposition.[42] Defendant also relies heavily on the results of a formula it created utilizing known information about Plaintiff's incurred and expected medical

---

[40] *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, *3 (M.D. La. Jan. 6, 2012) and cited cases.
[41] *Broadway v. Wal-Mart Stores, Inc.*, No. 00-1893, 2000 WL 1560167, at *2 (E.D. La. Oct. 18, 2000), citing *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999)). *See also Torres v. Mall of Louisiana, LLC*, No. 17-466, 2017 WL 6884347, at *3 (M.D. La. Dec. 5, 2017) ("While Plaintiff seeks several items of damages, there is no indication of the amount in controversy related to her alleged damages. Thus, it is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000."); *Tucker v. Cincinnati Ins. Co.*, No. 17-414, 2017 WL5762436, at *3 (M.D. La. Aug. 24, 2017) ("'Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test.'"), quoting *Davis*, 2012 WL 278728, at * 3.
[42] *See, generally*, R. Docs. 1-3 – 1-8, R. Docs. 10-1 – 10-8, & R. Doc. 13-1.

expenses and quantum from cases involving injuries it claims are similar to Plaintiff's. However, Defendant's reliance on these records and the damages ranges produced by its formula to establish the amount in controversy is misplaced.

First, as explained in the September 23 Order, the information in Plaintiff's medical records about her injuries and treatment—even as supplemented by the Memorandum and its attachments[43]—is insufficient to establish that Plaintiff's claims likely exceed the jurisdictional threshold. All told, the injuries Plaintiff relates to the February 19 fall appear to be low back and knee pain, including lumbosacral facet joint syndrome, sacroiliitis, three herniated discs, and multiple bulging discs. For these injuries, Plaintiff has treated for about twenty months (as of the filing of the Memorandum), has undergone three transforaminal ESIs, and is "pending" a fourth transforaminal ESI. But, despite nearly two years of treatment, Plaintiff's incurred and/or expected medical expenses are only $22,265, which includes $16,501 in incurred medical expenses plus the $5,764 in medical expenses Plaintiff is expected to incur for the fourth ESI. Further, Plaintiff's medical records—and the record as a whole—contain little information about Plaintiff's prognosis and recommended future treatment (other than a recommended medial branch block/RFA in relation to lumbar herniated nucleus pulposus and lumbosacral facet joint syndrome, and that Plaintiff may benefit from bilateral SI joint injections in relation to sacroiliitis).[44] Critically, as

---

[43] Plaintiff's October 11, 2021 deposition and her August 25, 2021 treatment with LA Health Solutions as reflected in her "updated" medical record (referencing a "pending" transforaminal ESI "with a projected cost of $5,764") both occurred after Defendant removed this case. "When determining its jurisdiction, the Court may rely of submissions filed after removal, *so long as the post-removal filing sets forth facts developed at the time of removal.*" *Pylant v. Sedgwick Claims Management Services, Inc.*, No. 17-189, 2017 WL 3446536, at * 5 (M.D. La. June 29, 2017) (internal quotations and citations omitted) (emphasis added). Regardless, even considering the post-removal information and "updated" medical record, Defendant still has not carried its burden of establishing by a preponderance of the evidence that Plaintiff's claims exceed $75,000, exclusive of interest and costs.

[44] R. Doc. 10, pp. 2-3; R. Doc. 10-6, p. 6 ("If epidural steroid injection relieves the patient's radicular pain, but axial back pain persists, I *would likely* recommend MBB/RFA. If there is only short-term relief of the radicular pain, I *will likely order* medial branch blocks…") (emphasis added). Regardless, there is nothing in the record suggesting that Plaintiff has actually undergone a medial branch block and/or a radiofrequency ablation, nor is there any information about the medical expenses Plaintiff would incur if she underwent these procedures.

Defendant acknowledges, Plaintiff has not received a "formal surgical recommendation" regarding her back or knee pain.[45] Even for herniated discs, "[t]his court recognizes that "[w]hether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended."[46] "Accordingly, courts have found the lack of a recommendation for surgery to be significant in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record."[47] Further, Defendant has not provided any specific information—from summary judgment-type evidence or otherwise—pertaining to the nature or extent of any "disability" claimed by Plaintiff.

Without a surgical recommendation, or any specific information about Plaintiff's prognosis or recommended future treatment (other than that Plaintiff may benefit for some future medial branch block and/or radiofrequency ablation), Plaintiff's injuries and treatment, even as documented in the summary judgment-type evidence submitted in support in removal, do not establish the jurisdictional threshold, particularly considering that Plaintiff's documented past medical (and future expected) expenses for twenty months of treatment amount to only about $22,265.[48] There is ample authority from this Court and others in this Circuit, which has found that removing defendants failed to establish the jurisdictional threshold when alleging similar

---

[45] R. Doc. 10, p. 5.

[46] *Thomas v. Louis Dreyfus Commodities, LLC,* No. 15-394, 2016 WL 1317937, at *4 (M.D. La. Mar. 11, 2016), *report and recommendation adopted,* No. 15-394, 2016 WL 1337655 (M.D. La. Apr. 1, 2016), citing *Robinson v. Kmart Corp.*, No. 11–12, 2011 WL 2790192, at *4, n. 4 (M.D. La. Apr. 28, 2011), *report and recommendation adopted,* 2011 WL 2937952 (M.D. La. July 14, 2011).

[47] *Thomas*, 2016 WL 1317937 at *4: "*See, e.g., Hebert v. Hanco Nat. Ins. Co*., No. 07–362, 2009 WL 255948, at *4–5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff 'suffers from a herniated disc, without any recommendation for surgery' and the plaintiff 'continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish'); *Espadron v. State Farm Mut. Auto. Ins. Co.,* No. 10–53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a 'herniated cervical disc [or] segmental cervical instability' and a 'herniated lumbar disc [or] segmental lumbosacral instability' and was a 'potential surgical candidate' and plaintiff stipulated that his damages did not exceed $50,000). There is no evidence in the record that Plaintiff's physicians have recommended him to undergo surgery for his bulging discs."

[48] R. Doc. 10, pp. 2, 5; R. Doc. 13, pp. 2-3.

injuries, treatment, and medical expenses.[49]

The summary judgment-type evidence relating to Plaintiff's injuries reflects about $20,000 in medical expenses incurred over nearly two years of treatment, which includes three or four ESIs and statements from Plaintiff's medical providers that future medial branch blocks and/or radiofrequency ablations may be helpful,[50] but this type of conservative treatment does not meet the jurisdictional threshold.[51] Furthermore, while the Petition demands "past wages," *i.e.*, lost wages, and "loss of earning capacity,"[52] there is no evidence of the amount of Plaintiff's lost wages or inability to work, how many days of work she missed, if any, or whether she is working/can work. To the contrary, Plaintiff's discovery responses attached to the Notice of Removal expressly state that she is not making a claim for lost wages or loss of income capacity, and that she was not

---

[49] *See, e.g., Snearl v. Crete Carrier Corp.* No. 21-266, 2021 WL 5817453 (M.D. La. Nov. 22, 2021), *report and recommendation adopted*, 2021 WL 5811966 (Dec. 7, 2021) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations; information in plaintiff's medical records, including that she "suffered, and continues to suffer from, neck and back pain, with radicular right leg pain; that she has undergone injections to her lumbar spine, including an epidural steroid injection and two medial branch blocks; and that she has received at least one lumbar radiofrequency ablation"; and incurred medical expenses totaling $28,281.20 over the course of more than one year of treatment with an orthopedic spine surgeon and pain management physician); *Johnson v. Petsmart, Inc.*, No. 16-3448, 2017 WL 360265 (E.D. La. Jan. 25, 2017) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations, including that he suffered injuries to his neck, back, head, and other body parts as a result of a slip and fall; incurred medical expenses totaling "almost $20,000," which did not include EMS bills, pharmacy bills, or specialist provider bills; and plaintiff's failure to stipulate that his damages do not exceed $75,000); *Witchen v. Churchill Downs, Inc.*, No. 16-12356, 2016 WL 4751794 (E.D. La. Sept. 12, 2016) (remanding case to state court for failure to establish amount in controversy despite defendant's argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, because of plaintiff's injury and damages allegation; information in plaintiff's medical records and discovery responses showing that she suffered a broken femur and fractured hip, underwent surgery at the emergency room, was hospitalized for fifteen days, experienced and treated for complications arising from the surgery, treated with physical and occupational therapists, and incurred "at least $22,998.08 in medical expenses"; and plaintiff's failure to stipulate that her damages do not exceed $75,000 and failure to include an Article 893 statement in her petition); *Aldrich v. DBP Holding Corp.*, No. 13-5729, 2014 WL 2215707 (E.D. La. May 28, 2014) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations; incurred "medical expenses total[ing] in excess of $20,000" at the time of removal, a "quantum study of seven allegedly similar cases in which general damages ranged from $50,000 to $150,000"; plaintiff's failure to stipulate that her damages did not exceed $75,000; and an e-mail from plaintiff's counsel stating that the amount in controversy is "greater than 75000 [sic].").

[50] *See, generally*, R. Docs. 1, 10, & 13, and all attachments to those documents.

[51] *See* fn. 45, *supra*.

[52] R. Doc. 1-2, ¶ 1.

employed at the time the responses were given (April 27, 2021), nor at the time of the accident.[53] Likewise, there is no evidence of the "disability from engaging in recreation" Plaintiff claims she sustained because of the fall.[54]

Plaintiff's discovery responses actually cast doubt as to whether the amount in controversy is met. In response to interrogatories regarding whether her alleged damages exceed $50,000 and $75,000, exclusive of interest and costs, Plaintiff responded: "Plaintiff objects to this interrogatory as requiring a legal conclusion and being premature considering discovery is still ongoing. Plaintiff reserves the right to supplement and amend this response throughout the duration of discovery."[55] In response to a request to admit that her damages are less than $75,000, exclusive of interests and costs, Plaintiff responded: "Plaintiff denies for lack of sufficient evidence thereof."[56] Although this is technically a denial that her damages are less than $75,000, it is a denial for lack of sufficient information and, therefore, not the type of unambiguous statement regarding the jurisdictional amount that provides support that the amount in controversy requirement is met.[57] At most, it appears that Plaintiff's responses amount to an inability to say one way or the other whether her damages are likely to exceed $75,000 at the point in time when they were provided.

Defendant also attempts to show that the amount in controversy is satisfied through its formula, which utilizes damages awards from Louisiana state court cases (and statements from

---

[53] R. Doc. 1-3, pp. 6, 8 (Answers to Interrogatory Nos. 18 & 25).

[54] *Id*.

[55] R. Doc. 1-3, p. 9 (Answers to Interrogatory Nos. 30 & 31).

[56] R. Doc. 1-4, p. 1 (Response to Request for Admission No. 1).

[57] *See* R. Doc. 9, pp. 4-5. *See, e.g.*, *Thomas v. Ace American Ins. Co.*, No. 21-327 (M.D. La. July 30, 2021), at R. Doc. 10 (*sua sponte* remanding case to state court because defendants failed to establish by a preponderance of the evidence that plaintiffs' claims exceeded $75,000, exclusive of interest and costs, where the plaintiffs' discovery responses, relied on by defendants to support removal, were "ambiguous regarding the amount in controversy" (internal quotations and citations omitted)); *Leger v. Hudson Ins. Co.*, No. 21-248 , 2021 WL 3662071, at *3 (M.D. La. Aug. 18, 2021) (*sua sponte* remanding case to state court because defendants failed to establish by a preponderance of the evidence that plaintiff's claims exceeded $75,000, exclusive of interest and costs, because the "Court places little stock in Plaintiff's response to Defendants' ambiguous request" regarding the amount in controversy).

this Court regarding same) that involve purportedly similar injuries to those claimed by Plaintiff.[58]

However, Defendant "must do more than merely show that plaintiff could recover more than the

jurisdictional amount" to satisfy their burden.[59] As noted in the September 23 Order, these state

court cases are not persuasive at this stage of the litigation, as there cannot be a meaningful

comparison of this case to any of those cases for the purposes of determining whether the

jurisdictional threshold is met because the relevant information regarding Plaintiff's injuries and

damages are unknown.[60] "The Defendant must point to facts **in this case** that establish that the

actual amount in controversy exceeded $75,000."[61]

Any doubt as the existence of subject matter jurisdiction is resolved in favor of remand.[62]

The amount in controversy is not facially apparent from the Petition and, despite the opportunity

to submit additional evidence, Defendant has not met its burden of proving by a preponderance of

the evidence that the amount in controversy likely exceeds $75,000, exclusive of interest and

---

[58] *See* R. Docs. 10 & 13.

[59] *Silva v. Hartford Ins. Co. of the Midwest*, No. 15-5844, 2016 WL 4501288, at *5 (E.D. La. Aug. 29, 2016). *See also Barrow v. James River Ins. Co.,* No. 16-15967, 2017 WL 656725, at *3 (E.D. La. Feb. 15, 2017) (accord). Indeed, as the Eastern District has explained, "the defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000." *Medina v. Johnstone*, Civil Action No. 17-6351, 2017 WL 3911793, at * 4 (E.D. La. Sept. 7, 2017), citing *De Aguilar*, 47 F.3d at 1412. The damages awards (and the cases from which they came) relied on by Defendant in connection with its formula "merely exemplify amounts in damages within the realm of possibilities that Plaintiff could recover, and to that end, '[t]he Fifth Circuit has explained a 'could well' standard sounds more like a 'possibility' standard of proof, rather than a 'more likely than not' standard.'" *Id.* (internal citations omitted).

[60] *See Silva,* 2016 WL 4501288, at *5: "Overall, Defendant's argument that the amount in controversy is satisfied by citing two Louisiana state court cases with highly individualized facts different from the facts at issue here is unconvincing. Because the fact finder has discretion in determining an appropriate amount of damages based upon the facts of each individual case, monetary awards in previous cases are not sufficient to meet Defendant's burden of establishing that the amount of controversy here is greater than $75,000. The Defendant must point to facts in this case that establish that the actual amount in controversy exceeded $75,000. Moreover, the damages awards cited by Defendant are based on the entire record after trial, whereas subject matter jurisdiction determinations must only be based on the jurisdictional facts that exist at the time of removal. This point is especially salient when the Plaintiff's particular alleged injury cannot be broadly generalized and compared across different plaintiffs with 'similar' injuries, and when such an injury can result in widely ranging damages awards that do not always satisfy the amount in controversy requirement."

[61] *Id.* (emphasis added).

[62] *Gasch*, 491 F.3d at 281-82. *See also Manguno*, 276 F.3d at 723 ("[A]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").

costs.[63] Accordingly, this matter should be remanded to the Eighteenth Judicial District Court for the Parish of West Baton Rouge, State of Louisiana.[64]

## III.    RECOMMENDATION

Based on the foregoing, Defendant has not met its burden of proving that the Court has subject matter jurisdiction over the claims asserted by Plaintiff based upon diversity jurisdiction under 28 U.S. § 1332(a). Specifically, Defendant failed to prove, by a preponderance of the evidence, that the requisite amount in controversy has been met in this case.

As doubts about the propriety of removal are resolved in favor of remand, **IT IS RECOMMENDED** that this matter be **REMANDED** to the Eighteenth Judicial District Court for the Parish of West Baton Rouge, State of Louisiana for lack of subject matter jurisdiction.

Signed in Baton Rouge, Louisiana, on June 30, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[63] "Because Defendant has not shown by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional amount, the Court has no need to consider whether Plaintiffs can show to a legal certainty that they will not be able to recover in excess of that amount." *Medina v. Allstate Vehicle and Property Insurance Company,* 458 F. Supp. 3d 591, 601 (W.D. Tex. May 1, 2020).

[64] Plaintiff's claims in this case assert violations of state law; therefore, this Court does not have federal question jurisdiction pursuant to 28 U.S.C. § 1331. Further, the fact that Plaintiff has not sought remand is not dispositive of the question of whether subject matter jurisdiction exists. It is axiomatic that subject matter jurisdiction cannot be conferred by consent, agreement, or other conduct of the parties." *See Gasch*, 491 F.3d at 284, citing *In re Tex. Consumer Fin. Corp*, 480 F.2d 1261, 1266 (5th Cir. 1973).